**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Steven H., )<br>)<br>      Plaintiff, )<br>)<br>   v. )<br>)<br>Kilolo Kijakazi, )<br>Commissioner of Social Security, [1] )<br>)<br>      Defendant. ) | Case No.: 20-cv-50181<br><br>Magistrate Judge Margaret J. Schneider |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Steven H. brings this action under 42 U.S.C. § 405(g) seeking remand of the decision denying him disability insurance benefits. The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, Plaintiff's motion for summary judgment, Dkt. 16, is granted, the Commissioner's motion for summary judgment, Dkt. 26, is denied, and the decision of the ALJ is reversed and remanded.

**BACKGROUND**

Plaintiff asserts that he is unable to work due to pain in his left foot and back, as well as his cervical spine degenerative disc disease. On June 29, 2017, Plaintiff filed an application for disability insurance benefits. R. 166-67. Plaintiff alleged a disability starting on July 20, 2015. *Id*. Plaintiff's claim was initially denied on December 15, 2017, and upon reconsideration on April 11, 2018. R. 89-101, 106-09. [2] Plaintiff filed a written request for a hearing, and the Administrative Law Judge ("ALJ") held a video hearing on January 18, 2019. R. 33-63. Plaintiff appeared with counsel in Evanston, Illinois, and testified at the hearing. *Id*. The ALJ also heard testimony from Diamond Warren, a vocational expert. *Id*.

At the time of the hearing, Plaintiff was 62 years old and lived with his wife and son. R. 38. He testified that he had worked as a purchasing manager for 24 years prior to working at Menards as an assistant manager for eight months. R. 38-40. As a result of a foot injury at work, Plaintiff underwent about ten injections followed by surgery which did not resolve his pain. R. 42-43, 62. In addition, Plaintiff has had back pain, which led to lumbar fusion surgery, as well as cervical spine degenerative disc disease and sleep apnea. R. 43-44, 50-51.

In June 2015, Plaintiff was referred to Dr. Flood, DPM, who diagnosed him with a neuroma and administered a nerve block. R. 370-76. In July 2015, Plaintiff underwent an MRI of his left

---

[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).
[2] The Court notes that the date established by the ALJ upon which Plaintiff filed his application for disability insurance benefits and the date Plaintiff's claim was initially denied, do not match the administrative record.

foot as well as an EMG and nerve conduction study of his lower extremities, which revealed bilateral lumbosacral radiculopathy and no neuropathic disease. R. 784. On July 9, 2015, Dr. Flood administered another injection. R. 380-82. At a follow-up, Plaintiff began a series of injections to address the neuroma pain and Dr. Flood advised him that he should temporarily not work. R. 394-412. In August 2015, Plaintiff saw Dr. Perlmutter, M.D., an orthopedic specialist, for his back pain. R. 354. Based on MRI results, Dr. Perlmutter found multi-level degenerative changes in Plaintiff's lumbar spine with moderate to severe left foraminal narrowing and two disc herniations. R. 353, 290-91. In September 2015, upon Dr. Perlmutter's recommendation, Plaintiff received an epidural steroid injection for his back. R. 353, 362-64. In November 2015, Dr. Perlmutter recommended a second steroid injection, which was administered the following month. R. 299-301, 294. Plaintiff also received two epidural injections in December 2015. R. 296

In January 2016, Dr. Flood opined that Plaintiff had not responded to the foot injections and explained that the foot neuroma had produced a gait alteration which may have caused his back problems. R. 419, 713. In both January and February 2016, he advised that Plaintiff should remain off work. R. 419, 713, 307. In March 2016, Plaintiff received another epidural steroid injection for his back. R. 311-12. In February and March 2016, he also attended physical therapy for his back and feet. R. 333-34, 931-82. In June 2016, Dr. Flood performed surgery on Plaintiff's left foot, with decompression and neurectomy. R. 891-93. In February 2017, Plaintiff told Dr. Perlmutter that he continued to have foot and back pain as well as problems with his left arm. R. 321. Dr. Perlmutter told Plaintiff that the flare-up of his cervical radiculopathy was not improving, and prescribed him Norco, an opioid narcotic medication. R. 1008. Dr. Perlmutter did not think Plaintiff's condition was to the point that surgical intervention would be considered, and Plaintiff did not want to consider surgery at that time. *Id.* In April 2017, Plaintiff saw Dr. Flood for a follow up regarding his foot pain. Dr. Flood discussed Plaintiff's prognosis with him and told Plaintiff that he would be restricted to sedentary work due to his ongoing foot problems and also to account for his ongoing spinal issues. R. 693.

In August 2017, Dr. Perlmutter ordered an updated lumbar spine MRI, which showed multi-level degenerative changes with a central disc herniation, moderate to severe neural foraminal stenosis, and a disc osteophyte complex abutting the nerve roots. R. 870-71, 1004. Dr. Perlmutter then concluded there were no more conservative treatments available for Plaintiff's spinal issues and referred Plaintiff to a spinal surgeon for recommendations regarding surgical treatment. R. 1195. In January 2018, Plaintiff was further evaluated, and spinal surgery was recommended. R. 1192-93. In March 2018, he underwent a lumbar laminectomy with fusion. R. 1229-31. This was followed by physical therapy from April to June 2018. R. 1277-79. In May 2018, he was diagnosed with severe sleep apnea with a recommendation for CPAP. R. 1283-84. In July 2018, Plaintiff was evaluated again for back and radicular leg pain. R. 1290. In August 2018, Plaintiff saw Dr. Bikshorn, M.D., a neurologist, who noted the possibility of fibromyalgia and referred him to a rheumatologist. R. 1360-61. In September 2018, he underwent an EMG of his upper extremities that revealed right carpal tunnel syndrome. R. 1367-68.

On January 18, 2019, Plaintiff testified at the hearing before the ALJ that his foot surgery was not successful in resolving his pain, and that he continued to feel as though he was walking on a bag of rocks. R. 43-44. In addition, he reported that his back surgery did not help with his pain, and that he experienced more radiating pain after his surgery. R. 45-46. He stated that the

2

pain has progressed to the point that he has shooting pain all over his body. R. 46. He testified that his pain radiated down to his hands, resulting in the inability to make a fist and shakiness with his hands. R. 51. Due to his sleep apnea, he used a CPAP machine but still had fatigue and took a nap daily for several hours. R. 49-50, 54. He reported that he was limited to standing for only a few minutes and walking short distances. R. 53. In addition, he needed to change positions every five to ten minutes while seated or standing and was unable to lift twenty pounds. R. 52-53. He claimed that he tried to do tasks such as washing dishes or laundry when he felt able, but that his adult son lived with him and helped him. R. 55, 57. He occasionally engaged in tasks such as mowing the lawn or going to the store but was only able to do these things for short periods of time. R. 56.

The vocational expert ("VE") also testified at the hearing that Plaintiff's past work as a manager as well as a retail manager trainee, though generally light work, was performed by him at the heavy level. R. 59. In one hypothetical posed to the VE, the ALJ asked whether an individual who could perform light work and had to alternate from standing or walking every thirty minutes to sitting for two to three minutes; occasionally could operate foot controls bilaterally; climb ramps, stairs, ladders, ropes, or scaffolds; occasionally could balance, stoop, and crouch; could frequently kneel and crawl but could not work at unprotected heights; and could occasionally work with moving mechanical parts, would be able to perform Plaintiff's past work as a manager and retail manager trainee. R. 59-60. The VE testified that the individual could perform such work, but that if he were limited to standing and walking for four hours total or to lifting and carrying ten pounds, he would be restricted to sedentary work. R. 61. The VE further testified that Plaintiff had no transferable skills to either light or sedentary work, and that there would be no work if a person needed to take two unscheduled breaks daily or was off task for at least twenty percent of the work day. R. 61-62.

The ALJ ultimately denied Plaintiff's request for benefits. R. 26. The ALJ found that Plaintiff had the following severe impairments: bilateral interdigital neuromas, status post left neurectomy, degenerative disc disease in the lumbar spine status post decompression and fusion, degenerative disc disease of the cervical spine, diabetes mellitus, and obstructive sleep apnea. R. 17. However, the ALJ found that through the date last insured, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. R. 18. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions, and that he could perform his past relevant work as a manager or retail manager trainee. R. 18, 25.

## STANDARD OF REVIEW

The reviewing court reviews the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at * 5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace

the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at * 7 (N.D. Ill. Feb. 27, 2013).

The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). Additionally, "[a]n ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)).

## DISCUSSION

Plaintiff raises three main arguments: (1) the ALJ erred in analyzing the medical opinions; (2) the ALJ's subjective symptom analysis was not supported by substantial evidence; and (3) the ALJ failed to support the conclusion that he could perform light work. The Court finds that the ALJ erred in analyzing the medical opinions and in the subjective symptom analysis. The Court concludes that it need not resolve the third question since a remand is justified based on the first two issues. The ALJ analyzed the evidence without proper consideration of the medical record. *See Suide v. Astrue*, 371 Fed. Appx. 684, 689-90 (7th Cir. 2010) (finding an "evidentiary deficit" left after ALJ's rejected Plaintiff's treating physician, leaving insufficient remaining evidence to support ALJ's RFC determination). This problem permeates the ALJ's analysis.

Specifically, the ALJ impermissibly chose a handful of treatment notes to discredit particular doctors without discussing the larger number of treatment notes that were consistent with the opinions. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.") This analysis by the ALJ began with the discussion of Dr. Perlmutter, an orthopedist with whom Plaintiff treated for three years. For example, the ALJ's analysis of Dr. Perlmutter's March 16, 2016, opinion consisted of the finding that it was not supported based on several observations during Plaintiff's physical examination during a February 23, 2017 visit:

> [H]e was in no acute distress, had normal spinal alignment and stance without decompensation, and walked with a smooth gait without spasticity or ataxia. He had normal alignment of the cervical spine without swelling, inflammation, or deformity. His range of motion was stiff but not painful and muscle strength was normal.

R. 24. The ALJ concluded that findings from this exam invalidated Dr. Perlmutter's prior findings. The ALJ cited to Dr. Perlmutter's notes from February 23, 2017, to support the conclusion that

4

Plaintiff's condition had improved. But the ALJ extracted a misrepresentative portion of the records that were unrelated to Plaintiff's areas of concern to do so. Other notes from that visit cast doubt on the ALJ's simplistic takeaway. For example, X-ray imaging continued to demonstrate L4-L5 spondylolisthesis, lumbar lordosis, and degenerative disc disease with foraminal stenosis. R. 323. In addition, Dr. Perlmutter noted that Plaintiff had a flare up of some cervical radiculopathy that was not improving. *Id.* The ALJ was not permitted to "cherry-pick" from Plaintiff's medical records to find examples to undercut Dr. Perlmutter's opinion regarding Plaintiff's limitations. *Denton*, 596 F.3d at 425; *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (remanding because the ALJ "misstated some important evidence and misunderstood the import of other evidence").

The Commissioner defends the ALJ's analysis by referring to the detailed narrative summary of Plaintiff's medical examinations set forth earlier in the ALJ's decision. It is certainly true that courts are advised to review ALJ decisions holistically and consider the ALJ's discussion throughout the decision. *See Zellweger v. Saul*, 984 F.3d 1251, 52 (7th Cir. 2021). However, relying on the ALJ's earlier narrative summary in the decision would require speculation because it is unclear what to make of the narrative. *See Sara N. v. Saul*, 2021 WL 4712711, No. 20 CV 50006 (N.D. Ill. Jan. 11, 2021), *3 ("[W]e can make educated guesses about what the ALJ was implying [in the narrative summary], but they are still guesses in the end.") As the ALJ's narrative shows, at some points, Plaintiff reported improvement and at other points the records show Plaintiff complaining of pain and declining to the point of needing surgery. Moreover, the ALJ declined to commit to endorsing any of the medical opinions in the case.

The ALJ also quoted language stating that Plaintiff was "satisfied with his current situation and does not want to entertain surgical intervention at this time." R. 24. Again, the ALJ left out the fact that at that point Dr. Perlmutter had concluded that Plaintiff was "not at a point where surgery would be considered." R. 323. As noted above, by 2018, Plaintiff's condition deteriorated to the point where Dr. Perlmutter recommended Plaintiff seek surgical treatment and surgery was performed. R. 1195, 1229-31. Again, the ALJ portrayed Dr. Perlmutter's opinion as inconsistent with the entire medical record, but unfairly ignored the majority of that record. Given all of this, the ALJ did not support his rejection of Dr. Perlmutter's opinion with substantial evidence.

The ALJ engaged in the same slanted analysis in analyzing the January 2019 opinion of Dr. Petersen, Plaintiff's primary care provider for more than 20 years. The ALJ rejected Dr. Petersen's finding that Plaintiff "should walk ten minutes just to change position, would need to change position every five to ten minutes, [and] would need to take breaks every fifteen to twenty minutes lasting ten to fifteen minutes," concluding:

> I did not find Dr. Petersen's opinions persuasive as they were not supported by his own findings upon examination, or consistent with the evidence of record. **On exam, he was in no acute distress, had normal spinal alignment and stance without decompensation, and walked with a smooth gait without spasticity or ataxia. He had normal alignment of the cervical spine without swelling, inflammation, or deformity. His range of motion was stiff but not painful and muscle strength was normal.**

5

R. 25 (emphasis added). Notably, the ALJ relied on the *exact same extract* from Dr. Perlmutter's February 2017 exam notes to invalidate Dr. Petersen's opinion from two years later. The ALJ did this without confronting any of the evidence to the contrary. In Dr. Petersen's January 2019 opinion, he reported that he had been Plaintiff's primary care provider for more than 20 years, that Plaintiff's pain was constant and would be considered 7-9 on a scale of 10, worsened with activity, and that he had been on multiple medications which had not helped his symptoms. R. 1406-07. Dr. Petersen's treatment notes show that at annual physicals Plaintiff had discussed his back pain and other symptoms. R. 1143. Without addressing any of this, instead, the ALJ relied on a snippet from another doctor's treatment notes to reject Dr. Petersen's opinion. This analysis does not show that the ALJ's decision is supported by substantial evidence. As with Dr. Perlmutter, the Commissioner attempts to defend the ALJ's analysis by referring to the detailed narrative summary of Plaintiff's medical examinations set forth earlier in the ALJ's decision. For the same reasons already discussed, such analysis also does not convince the Court that there is substantial evidence to support the ALJ's decision.

Finally, the ALJ never sufficiently addressed the key issues of consistency and supportability in addressing the medical opinions. An ALJ is required to consider the persuasiveness of medical opinions based on several listed factors, including supportability, consistency, the relationship of the treater with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Of those factors, supportability and consistency are the two most important for the ALJ to consider. 20 C.F.R. § 404.1520c(a). The ALJ used the words persuasive and consistent in discussing Dr. Perlmutter and Dr. Petersen's opinions, but there was no analysis on this issue beyond what has already been discussed. More is required on this key inquiry. *See Farzad K. v. Kijakazi*, 2021 WL 47755297, at *4, No. 20 C 2594 (N.D. Ill. Oct. 13, 2021) (remanding where the ALJ failed to adequately analyze how consistent a treating physician's opinions were "with the evidence from other medical sources and nonmedical sources in the claim").

The ALJ's analysis of Plaintiff's subjective symptoms fell victim to the same problem as the analysis of the medical opinions. Instead of analyzing Plaintiff's subjective symptoms and whether they are consistent with the medical evidence, the ALJ stated only the following:

> The claimant's subjective reported history cannot substitute for the objective medical evidence contained in the record, which provides a more accurate longitudinal history of the claimant's conditions. **On exam, he was in no acute distress, had normal spinal alignment and stance without decompensation, and walked with a smooth gait without spasticity or ataxia. He had normal alignment of the cervical spine without swelling, inflammation, or deformity. His range of motion was stiff but not painful and muscle strength was normal.**

R. 25.  Again, the ALJ referred to the same language from a single physical exam by Dr. Perlmutter in 2017.  This limited analysis did not provide substantial evidence to support the ALJ's conclusion on the issue.

The ALJ also omitted some contrary facts regarding Plaintiff's subjective symptoms.  For example, at the hearing Plaintiff testified that he continued to feel as though he was walking on a bag of rocks after his foot surgery, that he experienced increased pain after his back surgery, including shooting pains all over his body and numbness in his hands, arms, shoulders, and legs.  R. 43-44.  The ALJ also referred to Plaintiff's daily activities, including cleaning, cooking, shopping, and attending to personal care, as undercutting his claimed impairments.  R. 25.  However, the ALJ left out that Plaintiff noted that he would "try to" do most of these things when he could.  (R. 55-56 "try to do menial things at home . . . "try to cook dinner, not a lot . . . try to get out of the house" (referring to going to Menards once a month)).  In so doing, it appears that the ALJ exaggerated Plaintiff's activities of daily living.  *See Myers v. Berryhill*, No. 17 C 4908, 2018 WL 6696627, at *6 (N.D. Ill. Dec. 20, 2018).

In sum, several issues require a remand in this case.  The ALJ erred in assessing the medical opinion evidence by cherry picking and failing to address consistency and supportability.  The ALJ also erred in analyzing Plaintiff's subjective symptoms.  On remand, the ALJ should address these issues and any others not addressed herein.  In remanding this case, the Court is not representing that the ALJ must rule in a specific way or that the ALJ's rationales, if supported by appropriate evidence and made after a reasonable review of the record, could not be relied upon for the finding that Plaintiff was not disabled.

## CONCLUSION

For the above reasons, Plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the case is reversed and remanded for further proceedings.

Date:  March 31, 2022                    ENTER:

                                                                                            _Margaret J. Schneider_
                                                                                     United States Magistrate Judge